**LINDEMANN LAW FIRM, APC**
BLAKE J. LINDEMANN, SBN 255747
433 N. Camden Drive, 4th Floor
Beverly Hills, CA 90210
Telephone: (310)-279-5269
Facsimile: (310)-300-0267
E-mail: blake@lawbl.com

Attorneys For Plaintiff
YAN GUO AND ALL THOSE
SIMILARLY SITUATED

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| YAN GUO, an individual; and all those similarly situated,<br><br><br>Plaintiff,<br><br>v.<br><br>KYÄNI, INC., an Idaho Corporation; MICHAEL BRESHEARS, an individual; and DOES 1-100,<br><br><br>Defendants. | Case No. _____<br><br><br>**ORIGINAL COMPLAINT – CLASS ACTION**<br><br><br><br>**[DEMAND FOR JURY TRIAL]** |

I. **INTRODUCTION TO THE CASE**

1.     Kyäni, Inc. ("Kyäni") and its cohorts represented to Plaintiff Yan Guo ("Guo") that Kyäni provides a business opportunity "for a lifetime," and a "lifestyle you have always dreamed of." Plaintiff and hundreds of thousands, have joined Kyäni and have become distributors. Plaintiff did <u>not</u> make money as promised. As with the case of hundreds of thousands of Kyäni distributors before and after her, the Plaintiff failed. Plaintiff and those similarly situated, failed even though they were committed and put in the time and effort. They failed because they were doomed from the start by a Kyäni marketing plan that systematically rewards recruiting Distributors over the sale of products.

2.     Over 99% of Kyäni Distributors average net <u>losses</u>. No persons, except the promotors and owners of Kyäni, and secretly placed individuals into the "representative" tiers of the company, makes <u>any</u> money.

3.     Defendants run an illegal pyramid scheme. Defendants take money in return for the right to sell products, and reward for recruiting other participants into the pyramid. Accordingly, Plaintiff, for themselves, all others similarly situated, and the general public, allege:

II. **TYPE OF ACTION**

4.     Plaintiff sues for herself and for all persons who were Kyäni participants from 2011 until the present under California's Endless Chain Scheme Law (California's Penal Code § 327 and California Civil Code § 1689.2), California's Unfair Competition Law (Business and Professions Code §17200 et seq.), False Advertising Law (Business and Professions Code §17500), Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq*., Common Law Fraud, Unjust Enrichment, Conversion, and the Federal Securities Law against all defendants for the operation and promotion of an inherently fraudulent endless chain scheme.

III.  **PARTIES**

5.      Plaintiff Yan Guo ("Guo"), is and at all relevant times, has resided in the State of California, County of Los Angeles.

6.      Defendant Kyäni, Inc. ("Kyäni") is an Idaho Corporation doing business throughout the State of California, and may be served at its registered office located at 1070 Riverwalk Drive, Suite 350, Idaho Falls, Idaho 83402.

7.      Defendant Michael Bresehars ("Breshears") is the Chief Executive Officer of Kyäni who also has a business address at 1070 Riverwalk Drive, Suite 350, Idaho Falls, Idaho 83402. He is at or near the top of the pyramid operated and promoted by the Defendants, and he actively participates in, promotes, and profits from Kyäni's pyramid scheme.  Breshears is referred to hereinafter, as the Individual Defendant.

III.  **JURISDICTION AND VENUE**

8.      Jurisdiction is conferred upon this Court because Defendants do business in this judicial district, they hold themselves out and market to this jurisdiction, and they actually conduct significant transactions in this jurisdiction. Under Plaintiff's California state law claims, more than 75% of those affected in the class (and perhaps more persons) are residents of the State of California. Supplemental jurisdiction exists over the RICO causes of action and the Federal Securities claim, pled in the alternative.

9.      Venue is proper in this Court because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here, a substantial part of the property that is the subject of this action is situated here, and Defendants are subject to personal jurisdiction, in this District.

10.      Defendant Kyäni is subject to the jurisdiction of this Court. Kyäni has been engaged in continuous and systematic business in California.  In fact, many of Kyäni's representative business activities originate from California.

11.      Kyäni has committed tortious acts in the State of California.

12.     Each of the Defendants named herein acted as a co-conspirator, single enterprise, joint venture, co-conspirator, or alter ego of, or for, the other Defendants with respect to the acts, omissions, violations, representations, and common course of conduct alleged herein, and ratified said conduct, aided and abetted, or is other liable. Defendants have agreements with each other, and other unnamed Director co-conspirators and have reached agreements to market and promote the Kyäni pyramid as alleged herein.

13.     Defendants, along with unnamed Director co-conspirators, were part of the leadership team that participated with Kyäni, and made decisions regarding: products, services, marketing strategy, compensation plans (both public and secret), incentives, contests and other matters.   In addition, Defendants and unnamed co-conspirators were directly and actively involved in decisions to develop and amend the compensation plans.

14.     Plaintiff is presently unaware of the true identities and capacities of fictitiously named Defendants designated as DOES 1 through 100, but will amend this complaint or any subsequent pleading when their identities and capacities have been ascertained according to proof. On information and belief, each and every DOE defendant is in some manner responsible for the acts and conduct of the other Defendants herein, and each DOE was, and is, responsible for the injuries, damages, and harm incurred by Plaintiff. Each reference in this complaint to "defendant," "defendants," or a specifically named defendant, refers also to all of the named defendants and those unknown parties sued under fictitious names.

15.     Plaintiff is informed and believes, and thereon allege that, at all times relevant hereto, all of the defendants together, were members of a single association, with each member exercising control over the operations of the association.   Each reference in this complaint to "defendant," "defendants," or a specifically named defendant, refers also to the above-referenced unincorporated association as a jural entity and each defendant herein is sued in its additional capacity as an active and

participating member thereof. Based upon the allegations set forth in this Complaint, fairness requires the association of defendants to be recognized as a legal entity, as the association has violated Plaintiff and Class Members' legal rights.

16.     Plaintiff is further informed and believes and thereon alleges that each and all of the acts herein alleged as to each defendant was authorized and directed by the remaining defendants, who ratified, adopted, condoned and approved said acts with full knowledge of the consequences thereof, and memorialized the authority of the agent in a writing subscribed by the principal.

17.     Plaintiff is informed and believes and thereon alleges that each of the defendants herein agreed among each other to commit the unlawful acts (or acts by unlawful means) described in this Complaint.

18.     The desired effect of the conspiracy was to defraud and otherwise deprive Plaintiff and Class Members (as hereinafter defined) of their constitutionally protected rights to property, and of their rights under other laws as set forth herein. Each of the defendants herein committed an act in furtherance of the agreement. Injury was caused to the Plaintiff and Class Members by the defendants as a consequence.

IV.    **FACTS**

    **A.     Kyäni Operates A Pyramid Scheme**

19.     Kyäni was founded in 2005 by co-defendant Michael Breshears.

20.     Kyäni sells products marketed as health supplements.

21.     To become a distributor, a victim has to pay Kyäni an amount between $600 to $1,299.

22.     On or about 2016, representatives of Kyäni, managers of Kyäni, including the executive team that authorized solicitation, marketing, and training materials (including without limitation Defendant Breshears), promised to the Plaintiff, the putative class, and the public, the representations contained in ¶¶ 23 through 70 of this Complaint.

23.     In its training seminars, including those regional training seminars held by Kyäni in Los Angeles and represented by Kyäni and Breshears, Kyäni instructs its victims and Plaintiff, that if you hear "nothing else today besides this" the "secret of Kyäni" is to become a "Jade" (higher level of distribution), and teaching others to become "Jade."  To become a Jade, a distributor has to recruit and sign up several people below them.

24.     Kyäni and Breshears represented to Plaintiff and the Class Members that the only real way to sell is to "make a list of people you know" and "call in favors." Further, Kyäni represents that the first thing in Kyäni one must do is "make a list of everybody you know."

25.     Kyäni represented to the Plaintiff and the public, that a distributor makes a $100 sponsor bonus and a $800 fast start bonus in first 30 days, and a distributor can make back his or her money in 30 days.

26.     Kyäni further represents to the Plaintiff and the Public that Kyäni will "teach you to be a Jade in 72 hours!"

27.     Kyäni touts that distributors can make a one time bonus from "$5,000 to $1,000,000!" and that you can make $1.6 million while you help share the product, and help others to do the same thing.

28.     Kyäni also touts its "more with 4" program, that is, commissions and bonuses for singing up for persons downline.

29.     Kyäni teaches at its training seminars that distributors can "make money while you are sleeping worldwide.  You are getting a share of that.  Making money while you sleep."

30.     Distributors make a bonus on recruiting people through a pay gate accumulator.  According to this training seminar, Kyäni pays nine levels deep, *i.e.* 9 levels of the pyramid are paid for a new sign up, and that in Kyäni you get to "leverage the effort of others."

31.     Kyäni represented to Plaintiff that even a new distributor, can qualify for the a vehicle by recruiting yourself to Sapphire.  Pursuant to the vehicle program, Kyäni awards a monthly car to a distributor that signs up 13 recruits.  One can go out and personally sponsor 13 new recruits to qualify for the dreamcar program.

32.     Kyäni brags to the Plaintiff and the public of its "road rally" held in Las Vegas – thousands of vehicles of other high level individuals in Kyäni who are part of the dream car program.

33.     Kyäni also promises its distributors employment perquisites, *i.e.* the Kyäni Care compensation plan.  Kyäni claims this plan is similar to a "401k" in that you don't have to match.  You share products and share with others, and at the age of "retirement, you get a lump sum and go out to have more fun."

34.     Kyäni also represents that you get to help people's health indefinitely because Kyäni products permit them to avoid taking prescription drugs for diabetes.

35.     Kyäni has a sales script for obtaining customers and distributors, but they materially involve the same process as discussed.

36.     To encourage people to become customers/distributors, Kyäni encourages distributors to focus on emotions than what is included in the product.

37.     Kyäni next represents: "I just started a new business Kyäni, can you do me a huge favor" and give Kyäni a try.  "I am one customer away from the next promotion." "This is a consumer product that can gain results."

38.     The presenters of Kyäni claim that before they implemented this script they failed, but then they had 20 customers in one hour after making a list and saying the above to their friends and families.

39.     During the customer presentation, the speaker discusses in training that the essential aspect of being part of the dream car program is "3 persons below you."

40.     In further training seminar, Kyäni again reiterates what success requires.

41.     The "size of your list is the size of your dream" Kyäni proclaims to potential distributors.

42.     If you "want to do this right, you need a large list."

43.     After making a list, a distributor then sorts people in that list into "red apples, green apples, and rotten apples."

44.     "Red apples" are "up for anything," "fun to be around," and "flexible." Spend 80% of your time with "red apples" Kyäni represents to distributors.

45.     "Green apples" ask "too many question," they "need information," and want "to know details." Spend 20% of your time with "green apples" Kyäni teaches, but let them do their own research into the product. Green apples, unlike red apples are not good targets because they are guided by "logic, not emotion."

46.     Finally, Kyäni teaches, spend zero time with "Rotten Apples." "Rotten apples" come up with problems with a business model and why the model can't be good. According to the Kyäni speakers, "let them be rotten, and love them from a distance." Make what a "rotten apple" says go in "one ear, out the other."

47.     Kyäni also teaches that the only way to recruit is to have a "private business reception." (PBR). According to Kyäni, if "you are not doing them, you are not growing."

48.     In a PBR, the distributor has a "home party" and executives of Kyäni "present" to people in attendance. Kyäni teaches that the distributor need only invite 40 people into the home, and "who cares who these 40 people are."

49.     Through a PBR, Kyäni boasts, you can shoot up the organizational level and become a Sapphire in one night, and make $5000 in one night by all the people who sign up. Kyäni further represents that one half of the people who are invited will attend, and one third of the people who attend will sign up. As most distributors learn, they would be lucky to sign up 1 out of 10.

50.     The goal of a PBR is not say "too much," but only raise level of curiosity. What will haunt a distributor in recruiting others, Kyäni asserts, is "saying too much."

51.     Distributors are taught to inform potential people that are presented to is to advise there is a "ground floor opportunity for a few key people," that "deals with

health and wellness," where "the executive comes to answer questions," and is the "next trillion dollar industry."

52.     Kyäni targets Plaintiff and potential distributors to "pique, pass, and present."  Pique interest of the potential target, to pass off to upline to talk to them, and to see the presentation.

53.     Kyäni teaches distributors to have "upbeat music" at the beginning and end of the presentation.

54.     In addition to PBR's, Kyäni teaches to have "massive 3-way calls."

55.     According to Kyäni, if a distributor puts these 3 way calls with an upline every day, you "will be a diamond."

56.     As many distributors have asserted, the product (consisting of Omega 3 and melatonin) can be bought at a normal pharmacy for a fraction of the $80.00 price tag.  Distributors have reported there is no improvement by virtue of using the products, and that the products are overrated.  Distributors have also reported, these sales tactics create friction with friends.

57.     Kyäni claims that its name means "strong medicine" in the indigenous Alaskan Tlingit language, but some have suggested this representation is false.

58.     Kyäni represents that it "combines the world's most powerful superfoods to create the most compelling nutritional supplements in the industry."

B.     **The County Of Sweden Reports Kyäni To The Police For The Operation Of A "Chain Letter Game"**

59.     On October 29, 2015, the Swedish Gaming Board, the authority that polices conduct of businesses in Sweden, has reported Kyäni to the police for the "operation of a chain letter game."

60.     The Swedish Gaming Board further stated: "[i]t is the overall assessment that the main purpose of Kyäni business is recruiting to generate growing revenues to individuals placed at higher levels within the organization and that the profit potential

is related to ow many members gradually enter into the concept tand not primarily on the sale of products."

61.     Kyäni constantly emphasize the importance of recruiting: "the best companies in the word, they recruit."

62.     In 2014, the Hungarian Competition Authority (GVH) fined Kyäni Hungary for widespread use of illegal health claims in marketing.

63.     In 2013, the Country of Estonia banned the distribution of Kyäni Sunset due to the content of illicit substances.

## C.     **Kyäni Makes Further False Income Representations And Product Representations**

64.     Kyäni through its owners, agents and representatives, and Breshears by his authorization, represented to Plaintiff in 2016 through the internet, materials, sign-up documents, mailed materials, and through Kyäni's agents, made the following representations to Plaintiffs in the ¶¶ 65-78:

65.      Kyäni represents that your cash flow will grow in "size and stability" and that one can build strong business once and business ownership for a lifetime.

66.      Kyäni tells its victims: enjoy freedom of owning your own business.  A Kyäni business is "family, friends, and good health" and that with an "unmatched dream car program, exotic retreats, and lucrative compensation" Kyäni creates the "lifestyle you have always dreamed of."  Kyäni claims "join today, and experience more."

67.     Under Kyäni's compensation plan, a victim only gains a rank by recruiting people into the business opportunity.  The business opportunity is focused on recruiting people, and have them purchase 100 "points" in volumes.  Commissions and bonuses are paid to infinite level deep, which means that for each commission and person signed up, the profit travels up the entire pyramid.

68.     With this many levels, those at the top are enriched.  The price of the product is so high, it is impossible to legitimately sell these products retail, except to friends and families.

69.     Kyäni makes false and/or misleading income disclosures that are affirmatively false, and false by omission in the picture they present to proposed distributors, in that the representations imply a Kyäni distributorship is profitable, when these are in fact, false statements.  (*See* Figure No. 1).

FIGURE NO. 1



70.     Although there is purportedly a return policy on goods purchased from Kyäni, the return policy is only for 30 days, and does not include shipping and handling fees.

71.     Kyäni represents that the three products Sunrise, Sunset, and Nitro "provide you and your family with unmatched nutrition for optimal health."

72.     These products are described by Kyäni as the "Kyäni Triangle of Health™."  The labeling of the products represents the products as being "all natural," "complete nutritional spectrum" supplement, and "enhances production of nitric oxide," when none of these representations are true. (*See* Figure No. 2).

FIGURE NO. 2



73.     Further, Kyäni emphasizes recruitment over product sales. The Products are advertised to treat, cure, or alleviate the symptoms of cancer, diabetes, fibromyalgia, arthritis, anxiety, autism, ADHD, migraines, gout, insomnia, shingles, lupus, multiple sclerosis, post-traumatic stress disorder, and a host of other medical ailments. The examples, include: (1) claims made directly by the company, (2) claims made by the company's distributors, and (3) claims made by the three doctors and scientists who comprise Kyäni's "Scientific Advisory Board. Kyäni does not have competent and reliable scientific evidence in the form of clinical trials that are placebo-controlled, randomized, and double-blind. (See Fig No. 3 and 4).

FIGURE NO. 3



FIGURE NO. 4





74.     In short, there is no dispute that Kyäni wholly lacks the required evidence to support the various health and treatment claims made about its products.

75.     Further, Kyäni is using deceptive, atypical, and unsubstantiated income claims regarding the financial gains consumers will achieve by becoming distributors. For starters, Kyäni advertises to Plaintiff and the public that it "offers the most aggressive, most lucrative compensation plan in the industry," and that distributors "can reap the commissions, bonuses, check matches, PayGates, and other rewards that will help propel you to financial security and beyond."

76.      Kyäni and its executives make a host of unrealistic financial promises, ranging from getting a company car to making millions of dollars.

77.     The problem, however, is that while an overwhelming majority of Kyäni distributors do not make any profit at all, and do not obtain the often-touted company car, the vast majority of the income marketing claims boasting exorbitant financial rewards do not disclose this fact.

78.     Rewards paid in the form of cash bonuses, where primarily earned for recruitment, as opposed to merchandise sales to consumers, constitute a fraudulent business model.  *See F.T.C. v. BurnLounge, Inc.*, 753 F.3d 878 (9th Cir. 2014).

**D.     Distributors Are Unable To Sell Kyäni Products For A Profit**

79. Distributors are unable to consistently sell Kyäni products for a profit for many reasons. First, the products are overpriced. Interchangeable products are available online or in brick-and-mortar stores for amounts far less than Kyäni's suggested retail price, and even lower than its wholesale prices. Specifically, the ingredients in the "triangle" are commonly found at most local pharmacies.

80. Second, Kyäni's products themselves are available online for the wholesale price or less. That these products are sold at or below the retail price makes it difficult for Distributors to sell the products for a profit. Kyäni may claim to have made attempts to reduce sales, but the fact remains that Kyäni products are available below the discount prices. Moreover, many of these sales are likely made by current or former Distributors desperately trying to offload excess product at whatever price they can get, which further supports the proposition that Distributors Inventory Load and that the Kyäni products are overpriced.

81. Third, Kyäni prohibits Distributors from selling the products in the only forum for a where Distributors could reasonably expect to sell enough product to make a meaningful profit: the internet. Some examples of these prohibited websites include, but are not limited to: eBay, Amazon or Craigslist. In addition, Kyäni forbids its Distributors from selling Kyäni products at almost all brick-and-mortar establishments. Kyäni seeks to limit the Distributors to one-on-one situations in private locations (such as the Distributor's or a friend's home), but achieving significant, profitable retail sales by this method is extremely difficult.

82. Plaintiff does not contend that Distributors make no retail sales at all. But Plaintiff does allege that relatively little of the revenues received by Distributors—including both money paid them by Kyäni and proceeds from retail sales—comes from retail sales, and the vast majority comes from Distributors' payments to Kyäni. Thus, the Distributors are primarily feeding off each other.

83. Kyäni also makes false and/or inadequate income disclosures in that in many instances, it does not disclose income of those who are distributors, or provides

statements of income that are false, and/or misleading, that affirmatively represent a profitable business opportunity, when there is no profit to be made, and nearly all participants in fact, lose money.

84.     Because Kyäni pays the executives at the top of the pyramid exorbitant incomes and because little non-Distributor money comes into the scheme to pay Distributors, the Distributors at the bottom of the pyramid must lose money. These losses are borne out by Kyäni's own financial disclosures and the experiences of the Plaintiff and multiple other Distributors.

**E.     Breshears and Kyäni Promote the Pyramid**

85.     Breshears is a person at the top of Kyäni's pyramid.  Breshears is in the top 1% of Distributors who make the most lucrative bonuses.  He actively participates in the Kyäni pyramid scheme, and he profits from the compensation plan at the expense of the vast majority of Distributors.

86.     Kyäni and Breshears promote the pyramid scheme and make misleading claims of financial success.

87.     In coordination with Kyäni, Breshears has flooded the internet with promotional materials designed to lure in new Distributors. Kyäni and Breshears promote the scheme as a lawful program that, with sufficient hard work, virtually guarantees financial success. Kyäni and Breshears promote Kyäni as a reliable source of significant income.

88.     To sell the financial-success promise, Kyäni and Breshears flaunt the wealth of the highest-ranked Distributors and those few insiders at the top of the pyramid, as examples of the riches that await new participants, if only they will work hard enough (i.e., tirelessly recruit new Distributors).

89.     Kyäni, authorized by Breshears, has produced videos and made statements via the internet knowingly promoting Kyäni's pyramid scheme and touting the financial rewards supposedly available to participants.  Each of these statements furthered the

pyramid scheme by encouraging persons to become Distributors and by encouraging Distributors to remain Distributors and pursue the Kyäni business opportunity.

90.     The similarity of the statements made by Breshears indicates a collusive effort to promote the Kyäni scheme. The following paragraphs set forth just a small subset of publicly broadcast statements made by Kyäni, as authorized by Breshears, to promote the Kyäni opportunity.

F.     **Plaintiff is a Victim Of The Pyramid Scheme**

91.     Plaintiff Guo became a distributor on or about June of 2016 by paying approximately $1,500. Plaintiff Guo was deceived by Kyäni's misleading opportunity believing, the opportunity was a legitimate way to earn money (even though that representation by Kyäni and Breshears was false), and Plaintiff Guo did in fact lose money as a result of Defendants' unfair, unlawful, and fraudulent business practice.

92.     Plaintiff Guo was unable to make many retail sales, and she lost money in the Kyäni scheme even considering retail sales.

G.     **Purported Documents**

93.     At some times during Kyäni's history, it has apparently maintained a document labeled, "Policies and Procedures" (the "Policies").  The Policies permit "litigation" "for resolution of any claims or related litigation to interpret or enforce the terms of the Distributor Agreement."

94.     The "Kyäni Independent Distributor Agreement Terms and Conditions" (the "Application") has been used from time to time, and in a contradictory fashion, indicates there is a requirement of arbitration.  The conflict provision in the Application suggests precedence of the Policies over the Application.

95.     The arbitration policy of Kyäni is illusory, unenforceable and unconscionable for several reasons based on law and fact.

V.     **CLASS ACTION ALLEGATIONS**

96.     Plaintiff seeks to represent a nationwide class, defined as follows:

97. Plaintiff brings this action as a class action under Federal Rule of Civil Procedure 23.

98. Plaintiff seeks to certify a class pursuant to Fed. R. Civ. Proc. 23(a), 23(b), 23(c)(4), and 23(c)(5), if necessary.

99. Plaintiff seeks relief on behalf of herself and the following class: persons who paid start-up fees, monthly fees, annual fees, seminar ticket fees, any other fees imposed by Kyäni, and/or purchased products from Kyäni between January 1, 2011, to the present date, who lost money from their participation in the Kyäni scheme.

100. Subject to confirmation, clarification and/or modification based on discovery to be conducted in this action, Plaintiff also seek to represent a sub-class in California, defined as follows: persons residing in California who paid start-up fees, monthly fees, annual fees, seminar ticket fees, any other fees imposed by Kyäni, and/or purchased products from Kyäni between January 1, 2011, to the present date, who lost money from their participation in the Kyäni scheme.

101. Subject to confirmation, clarification and/or modification based on discovery to be conducted in this action, Plaintiff also seeks to represent a sub-class of all worldwide participants of Kyäni, defined as follows: persons residing anywhere in the World who paid start-up fees, monthly fees, annual fees, seminar ticket fees, any other fees imposed by Kyäni, and/or purchased products from Kyäni between January 1, 2011, to the present date, who lost money from their participation in the Kyäni scheme.

102. Pursuant to the previous paragraph of this complaint, the damage to any person living anywhere else other than the United States involved a domestic injury to business or property because all contracts of independent business owners were negotiated, executed, and stored on a server in the United States owned by Kyäni, and are available on the worldwide web, involved a significant connection to domestic commerce in that the labeling, products, and other parts of the manufacturing and

1  sales and marketing process were conducted from the United States, and for other

2  reasons to be provided according to proof, and after the opportunity for discovery.

3  103.   Excluded from the class are the Defendants, executives of Kyäni, family

4  members, this Court.

5  104.   Plaintiff seeks to pursue a private attorney general action for injunctive

6  relief for themselves and all members of the class, and they satisfy the standing and

7  class action requirements.

8  105.   While the exact number of members in the Class and Subclasses are

9  unknown to Plaintiff at this time, and can only be determined by appropriate

10  discovery, membership in the class and subclasses is ascertainable based upon the

11  records maintained by Defendant.  It is estimated that the members of the Class are

12  greater than 100,000, nationwide.

13  106.   Therefore, the Class and Subclasses are so numerous that individual

14  joinder of all Class and Subclass members is impracticable.

15  107.   There are questions of law and/or fact common to the class and

16  subclasses, including but not limited to: (a) Whether the Policies are enforceable to

17  permit litigation, or in the alternative, whether the Application is unenforceable

18  because it is illusory and/or unconscionable; (b) Whether Kyäni is operating an

19  endless chain; (c) Whether Distributors paid money to Kyäni for (1) the right to sell a

20  product and (2) the right to receive, in return for recruiting others, rewards which were

21  unrelated to the sale of the product to retail consumers; (d) Whether Kyäni's rules

22  apply to Section 327 claims; (e) If the Kyäni rules do apply, are Kyäni's rules

23  effective; (f) If the Kyäni rules do apply, and Kyäni's rules are effective, did Kyäni

24  enforce those rules; (g) Whether Kyäni or Breshears omitted to inform the Plaintiff

25  and the plaintiff class that they were entering into an illegal scheme where an

26  overwhelming number of participants lose money; (h) Whether Kyäni's statements of

27  compensation during the Class Period were deceptive and misleading; (i) Whether

28  Kyäni's conduct constitutes an unlawful, unfair and/or deceptive trade practice under

California state law; (j) Whether Kyäni's conduct constitutes unfair competition under California state law; and (k) Whether Kyäni's conduct constitutes false advertising under California state law.

108. These and other questions of law and/or fact are common to the class and subclasses and predominate over any question affecting only individual class members.

109. Plaintiff's claims are typical of the claims of the class and subclasses in that Plaintiff were Distributors for Defendant Kyäni and lost money because of the illegal scheme.

110. Plaintiff will fairly and adequately represent the interests of the class and subclasses. Plaintiff's claims are typical of those of the class and subclasses. Plaintiff's interests are fully aligned with those of the class and subclasses. And Plaintiff has retained counsel experienced and skilled in class action litigation.

111. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged, because such treatment will allow many similarly-situated persons to pursue their common claims in a single forum simultaneously, efficiently and without unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender.

112. Plaintiff knows of no difficulty likely to be encountered in the management that would preclude its maintenance as a class action.

VI.    **CLASS ACTION COUNTS**

**COUNT I**

**Declaratory Judgment Declaring Distributors May Commence Litigation**

(Plaintiff on behalf of Herself and those Similarly Situated, Against All Defendants, including DOES 1 through 100)

113. Plaintiff realleges all allegations as if fully set forth herein, and incorporate previous allegations by reference.

114.   The Policies permit Plaintiff and the Class to commence litigation in Court, which governs based on a conflict provision in the alleged documents.

115.   The Application seems to contradict the Policies and should be construed against the drafter, Kyäni.

116.   In the alternative, the arbitration policy of Kyäni is illusory, and unconscionable.

117.   The arbitration provision is alternatively, unenforceable as a matter of fact, and law.

118.   For these reasons, and those legal reasons to be stated in connection with any motion practice initiated by the Defendants, the Court should declare that any arbitration provision is illusory, lacks consideration, is unenforceable, and that the Plaintiff's claims and the Classes' claims are properly before this Court.

## COUNT II

**ENDLESS CHAIN SCHEME; California Penal Code § 327 and Section 1689.2 of the California Civil Code**

(Plaintiff on behalf of herself and the Class, Against All Defendants including DOES 1 through 100)

119.   Plaintiff realleges all allegations as if fully set forth herein, and incorporate previous allegations by reference.

120.   Section 1689.2 of the California Civil Code provides: "[a] participant in an endless chain scheme, as defined in Section 327 of the Penal Code, may rescind the contract upon which the scheme is based, and may recover all consideration paid pursuant to the scheme, less any amounts paid or consideration provided to the participant pursuant to the scheme."

121.   The Defendants are operating an endless chain scheme under Section 327 of the Penal Code because they have contrived, prepared, set up, and proposed an endless chain as pled in the factual section of this FAC.  Nearly 99% of those who participate in Kyäni's business fail.

122.   The Kyäni operation constitute a scheme for the disposal or distribution of property whereby class members pay a valuable consideration for the chance to receive compensation (as pled in the fact section) for introducing one or more additional persons into participation in the scheme or for the chance to receive compensation when a person introduced by the participant introduces a new participant.

123.   Independently, the Kyäni operation constitutes an endless chain because members pay an initial fee and then are required to purchase significant amounts of product, only to have a membership terminated (and points/commissions canceled), if he fails to pay.

124.   Independently, the Kyäni operation constitutes an endless chain because defendants tell victims they earn commissions by recruiting other people to buy memberships and the members, were in turn, instructed to recruit more members. Revenues are made primarily from recruitments.

125.   Independently, the Kyäni operations constitute an endless chain because Defendants' commissions, income, lottery gifts like vehicles, and free products were based on a current member's sales of memberships to new members and not the sale of products.

126.   Plaintiff and the Class have suffered an injury in fact and have lost money or property because of Kyäni and Breshears' operation of an endless chain, business acts, omissions, and practices.

127.   Plaintiff and the Class are entitled to: (a) rescind all receipts, statements, invoices, and writings upon which the scheme is based and recover all consideration paid under the scheme, less any amounts paid or consideration provided to the participant under the scheme; (b) restitution, compensatory and consequential damages (where not inconsistent with their request for rescission or restitution); and (c) attorney's fees, costs, pre and post-judgment interest.

## COUNT III

### Unfair and Deceptive Practices Claims Under Cal. Bus, & Prof. Code § 17200, *et seq.*

(Plaintiff on behalf of herself and the Class Against All Defendants including DOES 1 through 100)

128. Plaintiff realleges all allegations as if fully set forth herein, and incorporate previous allegations by reference.

129. All claims brought under this Third Cause of action that refer or relate to the unlawful, fraudulent or unfair "endless chain" of the Defendants are brought on behalf of Plaintiff and the Class.

130. All claims brought under this Third Cause of Action that refer or relate to the unlawful, fraudulent or unfair the statements, the touted Kyäni "business opportunity" are brought on behalf of Plaintiff and the Class.

131. Kyäni has engaged in constant and continuous unlawful, fraudulent and unfair business acts or practices, and unfair, deceptive, false and misleading advertising within the meaning of the California Business and Professions Code § 17200, *et seq*. The acts or practices alleged constitute a pattern of behavior, pursued as a wrongful business practice that has victimized and continues to victimize thousands of consumers for which Plaintiff's seek to enjoin from further operation. The Kyäni Sales and Marketing Plan Is Unlawful.

132. Under California Business and Professions Code § 17200, an "unlawful" business practice is one that violates California law.

133. Kyäni's business practices are unlawful under § 17200 because Kyäni's promotions constitute an illegal "endless chain" as defined under, and prohibited by, California Penal Code § 327.

134. Kyäni utilizes its illegal "endless chain" with the intent, directly or indirectly, to dispose of property in Kyäni's products and to convince Distributors to recruit others to do the same.

135.   Kyäni's business practices are unlawful pursuant to §17200 because they violate §17500 *et seq.*, as alleged in the Fourth Count.

136.   Under California Business and Professions Code § 17200, a "fraudulent" business practice is one that is likely to deceive the public.

137.   Kyäni's business practices are fraudulent in two separately actionable ways: (1) Kyäni's business constitutes an illegal and deceptive "endless chain;" (2) the touted, yet non-existent, Kyäni "business opportunity" is for everyone, including but not limited to Kyäni's massive advertising campaign and the misleading statements of compensation.

138.   First, as detailed herein, Defendants promoted participation in the Kyäni endless chain, which has a compensation program based on payments to participants for the purchase of product by participants, not the retail sale of products or services.

139.   Kyäni has made numerous misleading representations to Plaintiff about the business opportunity of Kyäni and the income that a recruit or a distributor can realize by becoming a distributor, and participating in the scheme, as outlined above in ¶¶ 19-78.

140.   Kyäni knew, or should have known, that the representations about the business opportunity of Kyäni were misleading in nature.

141.   As a direct result of Kyäni' fraudulent representations and omissions regarding the Kyäni endless chain described herein, Kyäni wrongly acquired money from Plaintiff and the members of the classes.

142.   Second, Kyäni touted, in numerous different ways as part of a massive advertising campaign, a "business opportunity," which Kyäni also repeatedly and in many ways represented, among other things, as being "for everyone" and allowing "full time" or "part time" opportunities.

143.   The massive advertising campaign included among other things, the website, emails, websites, presentations by Kyäni, training, word of mouth among Distributors, and events.

144.   As part of this campaign and a further inducement to potential Distributors, Kyäni made and disseminated statements of compensation that further misled the public, among other things: (1) by using cryptic and technical terms known to Kyäni but not to the general public or to those exploring the claimed "business opportunity," (2) by highlighting the successful persons, i.e., those that received compensation from Kyäni, and the average gross compensation paid by Kyäni to those persons, (3) by failing to disclose the actual number of successful persons as compared to the number of Distributors who received no compensation from Kyäni, and (4) by downplaying and omitting the risks and costs involved in starting an Kyäni Distributorship and succeeding in such a Distributorship.

145.   In reality, the touted "business opportunity" was only for a select few, and those that were recruited specially.  And these numbers did not include expenses incurred by distributors in the operation or promotion of their businesses, meaning there were likely more net losers who made no profit at all.

146.   Kyäni knew, or should have known, that the selective information presented to distributors in the compensation and its massive adverting campaign during that time frame touting its purported "business opportunity" was likely to mislead the public and did in fact mislead the public into believing that there was a legitimate "business opportunity" in which Distributors/Distributors, or a large portion of them, could make money in either a full or part time capacity. In fact, however, there was no such "business opportunity," except for a very select few.

147.   As a direct result of Kyäni' fraudulent representations and omissions regarding the Statement and the massive adverting campaign during that time frame and thereafter touting Kyäni's purported "business opportunity" described herein, Kyäni wrongly acquired money from Plaintiff and the members of the classes.

148.   The named Plaintiff has standing to bring these § 17200 claims under the fraudulent prong, and can demonstrate actual reliance on the alleged fraudulent conduct.

149. For instance, the Plaintiff has been in receipt of misleading and false financial statements and marketing materials/seminar papers, which promoted the Kyäni scheme and claimed "business opportunity" and contained material false representations regarding the success Distributors could achieve through Kyäni by purchasing products and recruiting others to do the same, as pled in ¶¶ 19-78.

150. There were other representations made to Distributors as part of the massive advertising campaign regarding the claimed "business opportunity," on which Plaintiff or some of the Class Members, reasonably believed the representations they could succeed in the "business opportunity," did not return the refund, purchased Kyäni products and did not immediately return them, signed up as Kyäni Distributors, and attempted to and recruited others to do the same. These other representations include, but are not limited to the following: (a) emails from Kyäni that promoted Kyäni and contained material false representations regarding the success that a distributor could achieve through Kyäni by purchasing products and recruiting others to do the same; (b) websites, such as www.Kyäni.com and Kyäniskin.com, which promoted the fraudulent scheme through videos of Kyäni (as authorized by Breshears) containing material false representations regarding the "business opportunity" available to Distributors and the wealth that a distributor could get by agreeing to become an Kyäni distributor; (c) presentations by Kyäni Distributors which contained material false representations regarding the "business opportunity" and the success that a distributor could get through Kyäni by purchasing products and recruiting others to do the same; (d) presentations by Kyäni, including the presentations described in this complaint, which contained material false representations regarding the "business opportunity" and the success that a distributor could get through Kyäni by purchasing products and recruiting others to do the same; (e) training and events where Kyäni Distributors made material false representations regarding the "business opportunity" and the success that a distributor could get through Kyäni by purchasing products and recruiting others to do the same.

151. To the extent proof of reliance is required of Plaintiff, Kyäni and Breshears knew that Plaintiff and the Class would reasonably rely on their representations and omissions, which would cause the Plaintiff and the Class joining the fraudulent endless chain scheme and purchasing the products, and Plaintiff did in fact reasonably rely upon such representations and omissions.

152. Indeed, had Plaintiff and the Class known that Kyäni and Breshears were promoting an endless chain, they would not have become Kyäni Distributors in the first place and, if learned after becoming a distributor, they would not have purchased Kyäni products thereafter.

153. Had Plaintiff and the Class known that Kyäni was promoting a "business opportunity" that did not exist except for a select few, they would not have become Kyäni Distributors in the first place and, if learned after becoming a distributor, they would not have purchased Kyäni products thereafter.

154. The fraudulent acts, representations and omissions described herein were material not only to Plaintiff and the Class (as described in this complaint), but also to reasonable persons.

155. Under California Business and Professions Code § 17200, a business practice is "unfair" if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury which outweighs its benefits.

156. For the reasons set forth herein and above, Kyäni's promotion and operation of an unlawful and fraudulent endless chain, and its fraudulent representations and omissions regarding its purported "business opportunity," are also unethical, oppressive, and unscrupulous in that Kyäni is and has been duping Plaintiff and the class out of billions, or at least hundreds of millions, of dollars.

157. Kyäni's actions have few, if any, benefits. Thus, the injury caused to Plaintiff and the class easily and dramatically outweigh the benefits, if any.

158. Defendants should be made to disgorge all ill-gotten gains and return to Plaintiff and the class all wrongfully taken amounts.

159.   Defendants willfully violated Foreign Corrupt Practices Act of 1977 (FCPA) 15 U.S.C. § 78dd-1, *et seq*.

160.   In order to explore various international markets, including China and Sweden, Defendants asked their nationally residing distributors to recruit foreign nationals in China, Sweden, and other countries to become Kyäni distributors without legal authorization from these governments, without licensing as required by these foreign laws, and in violation of the laws of these Countries.

161.   Promoters of Kyäni made significant profits in cash from the events and utilized multiple individuals and other means to carry their cash back to the United States for them. The conduct violates foreign laws and constitutes money laundering and tax evasion.

162.   Defendants' conduct violated Foreign Corrupt Practices Act of 1977 (FCPA) 15 U.S.C. § 78dd-1, et seq.

163.   Based on the Defendants' violation of the FCPA, Plaintiff, the class, and the general public are entitled to injunctive relief derivatively through Cal. Bus. & Prof. Code 17200, even if the FCPA does not provide a private right of action.

164.   Kyäni, acting in concert with DOES 1 through 100, inclusive, aided, abetted and conspired with Defendants in making the concealment against named Plaintiffs and class members.

165.   As a direct and legal result of Defendants' willful and unfair conduct, named Plaintiff, the public, and those similarly situated, have suffered damages.

166.   Finally, Defendants' unlawful, fraudulent and unfair acts and omissions will not be completely and finally stopped without orders of an injunctive nature. Under California Business and Professions Code section 17203, Plaintiff and the Class seek a judicial order of an equitable nature against all Defendants, including, but not limited to, an order declaring such practices as complained of to be unlawful, fraudulent and unfair, and enjoining them from further undertaking any of the unlawful, fraudulent and unfair acts or omissions described herein.

## COUNT IV

**False Advertising - California Business and Professions Code § 17500, et seq.**

(Plaintiff on behalf of herself and the Class Against All Defendants including DOES 1 through 100)

167.   Plaintiff realleges all allegations as if fully set forth herein, and incorporate previous allegations by reference.

168.   All claims brought under this Fourth Count that refer or relate to the false, untrue, fraudulent or misleading endless chain of Defendants are brought on behalf of Plaintiff and the Class.

169.   All claims brought under this Fourth Count that refer or relate to the false, untrue, fraudulent or misleading statements of income are brought on behalf of Plaintiff.

170.   All claims brought under this Fourth Count that refer or relate to the false, untrue, fraudulent or misleading statements of income are brought on behalf of Plaintiff and the Class.

171.   Defendants' business acts, false advertisements and materially misleading omissions constitute false advertising, in violation of the California Business and Professions Code § 17500, *et seq*.

172.   Defendants engaged in false, unfair and misleading business practices, consisting of false advertising and materially misleading omissions regarding the purported "business opportunity," and the "health benefits" likely to deceive the public and include, but are not limited to, the items set forth in the factual background of this Complaint. Kyäni knew, or should have known, that the representations about the business opportunity of Kyäni were misleading in nature.  The statements made to Plaintiffs, and the date of the allegations, are found at ¶¶ 19-78 of this Complaint.

173.   Because of Defendants' untrue and/or misleading representations, Defendants wrongfully acquired money from Plaintiff and the class members to which they were not entitled. The Court should order Defendants to disgorge, for the benefit

of Plaintiff and all other Kyäni Distributors in the class who signed an agreement with Kyäni governed by California law their profits and compensation and/or make restitution to Plaintiff and the Class.

174. Under California Business and Professions Code Section 17535, Plaintiff and the Class seek a judicial order directing Defendants to cease and desist all false advertising related to the Defendants' illegal endless chain scheme, and such other injunctive relief as the Court finds just and appropriate.

175. Because of Defendants' untrue and/or misleading representations, Defendants wrongfully acquired money from Plaintiff and the class members to which they were not entitled. The Court should order Defendants to disgorge, for the benefit of Plaintiff and all other Kyäni Distributors in the class who signed a Distributor Agreement with Kyäni their profits and compensation and/or make restitution to Plaintiff and the class.

176. Under California Business and Professions Code Section 17535, Plaintiff and the class seek a judicial order directing Defendants to cease and desist from all false advertising related to the Defendants' illegal scheme, and such other injunctive relief as the Court finds just and appropriate.

## COUNT V

### Fraudulent Concealment/Non-Disclosure

(Plaintiff on behalf of herself and the Class Against All Defendants including DOES 1 through 100)

177. Plaintiff realleges all allegations as if fully set forth herein, and incorporate previous allegations by reference.

178. As alleged above in ¶¶ 23 through 70 of this Complaint, Defendants made a number of representations concerning their business, including that this was a way for normal people to obtain incredible financial success.

179. Defendants' representations described above were false. However, despite knowing of the falsity of their representations, Defendants concealed, and/or

failed to disclose material and contrary facts set forth above, including, among other things, that nearly 99% of all participants in Kyäni's pyramid scheme failed.

180. Defendants had a duty to disclose this information to their participants because: it is material information that would reflect the fraudulent nature of the business, and Defendants knew the information was not reasonably discoverable by their participants; Defendants made affirmative representations that were contrary and misleading without the disclosure of this information; and/or Defendants actively concealed this information from their participants, the government and the public.

181. Defendants concealed and failed to disclose these material facts with the intent to deceive Plaintiff and the Class, including but not limited to concealing the fact that nearly all participants in the pyramid scheme fail.

182. Defendants' concealments and non-disclosure of material facts as set forth above were made with the intent to induce Plaintiff and the Class to join the Kyäni opportunity.

183. Plaintiff and the Class, at the time these failures to disclose and suppressions of facts occurred, and at the time Plaintiff and the Class became distributors, were ignorant of the existence of the facts that Defendants suppressed and failed to disclose. If Plaintiffs and the Class had known of Defendants' concealments and failures to disclose material facts, they would not have taken the actions they did, including but not limited to becoming distributors of Kyäni.

184. Plaintiffs and the Class' reliance was justified and reasonable as they had no basis to doubt the original representations made to them, nor did they have reason to believe they were being misled or material facts were being concealed from them.

185. As a direct and proximate result of the above, Plaintiffs and the Class have suffered damages in an amount to be proven at trial.

186. Defendants undertook the aforesaid illegal acts intentionally or with conscious disregard of the rights of Plaintiffs and the Class, and did so with fraud, oppression, and/or malice. This despicable conduct subjected Plaintiffs and the Class

to cruel and unjust hardship so as to justify an award of punitive damages in an amount sufficient to deter such wrongful conduct in the future. Therefore, Plaintiffs and the Class are also entitled to punitive damages against Defendants in an amount to be determined at trial. Plaintiff realleges all allegations as if fully set forth herein, and incorporate previous allegations by reference.

## COUNT VI

### (RICO 18 U.S.C. § 1961(5), 1962(c))

(Plaintiff on behalf of herself and the Class Against All Defendants including DOES 1 through 100)

187. RICO prohibits the following conduct: It shall be unlawful for (1) any person (2) employed by or associated with (3) any enterprise (4) engaged in, or the activities of which affect, interstate or foreign commerce, (5) to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs (6) through a pattern of racketeering activity or collection of unlawful debt. 18. U.S.C. § 1961.

188. Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

189. RICO requires that a "person" violate its provisions." 18 U.S.C. § 1962(c-d). A RICO "person" includes any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). A RICO person can be either an individual or a corporate entity. All Defendants named in this count are RICO persons.

190. Defendants Kyäni and Breshears have acted as an "association-in-fact" for a common purpose, have and maintained relationships between and among each other (and nonparties), and the association-in-fact has a longevity sufficient to permit those associates to pursue the enterprise's purpose the establishment and perpetuation of an unlawful pyramid scheme in which hundreds of thousands of people have lost

money. The operation and management of the association in fact was generally led, at various times, by Defendants Kyäni and Breshears. The individual promoter defendants Shouhed generally operated certain field aspects of the enterprise, taking direction from Kyäni and Breshears. Kyäni and Breshears provided funds to enable the association to grow and management and strategic advice to grow and expand the pyramid scheme. Later, Kyäni and Breshears provided financial incentives to certain recruiters.

191. The "association-in-fact" began in 2005 and has continued to today. Each of the Defendants charged in Count V has been a part of the association-in fact as follows: Kyäni: 2005-present; Breshears: 2005-present.

**A.  Kyäni and Breshears Make False Claims As To The Kyäni Opportunity**

192. In 2005 Breshears formed Kyäni.

193. Kyäni makes various representations about the business opportunity of Kyäni as set forth in ¶¶ 23-70.

194. Each of the statements made by Kyäni in ¶¶ 23-70, were false and misleading.

**B.  Rico Enterprise**

195. A defendant can be both a RICO "person" and part of another RICO "enterprise." Plaintiff and the Class allege the following:

(a) each Defendant is a RICO "person."

(b) each individual defendant, i.e., each person, combination of persons or combination one or more person and an entity as defined above, is a RICO "person."

(c) the Defendants named in this Count are an "enterprise," (e.g., a de facto corporation acting as a single legal entity, or, alternatively, an association in fact).

196.   There was an identifiable hierarchy and framework within the enterprise. It is directed by Breshears, to whom the remaining Defendants named in this Count report.

C.   **All Defendants Are "Employed By Or Associated With" The Rico "Enterprise"**

197.   Under Section 1962(c), a defendant must be "employed by or associated with" the RICO enterprise.  Section 1962(c) operates equally to both "insiders" and "outsiders" who participate directly or indirectly in the conduct of the enterprise's affairs through a pattern of racketeering activity. All Defendants named in this Count are employed by or associated with the enterprise, as set forth in detail previously.

198.   They conduct and participate in the operation or management of the pyramid scheme through a pattern of racketeering activity, by conducting the affairs and supporting the acts of the pyramid scheme.  Breshears uses the assets of Kyäni to direct, in whole or part, the affairs of the pyramid scheme, including the operation of the pyramid scheme and the distribution of unlawful profits to individuals associated with the scheme.  Breshears controls and directs the websites, web presentations, events, sponsored conventions and speeches of each of them, and the dissemination of video of same, and the individual promoter Defendants named in this Count.

199.   Breshears has directed the Company to disburse over time, millions of dollars to Breshears.

200.   The other promoters of Kyäni are also "employed by or associated with" each other and the remaining Defendants for purposes of RICO.  They conduct and participate in the operation or management of the pyramid scheme through a pattern of racketeering activity, by conducting the affairs and supporting the acts of the pyramid scheme.  They receive payments and benefits for operating at or near the top of the "downline" pyramid, engage in wholesale recruiting at the direction of Kyäni. Breshears, communicates regularly with Kyäni, operates the website that induces innocent people to engage in the illegal pyramid, and cooperate with the other

Defendants to lend their names to promotional materials. While appearing as ostensible "independent" distributors for purposes of convincing innocent recruits to join the "business opportunity," each of the promoters takes direction from and is in contact with each other and Breshears.

### D. All RICO Persons Are Distinct From The RICO Enterprise

201. RICO requires the involvement of a RICO "enterprise." 18 U.S.C. § 1964 (a-d). An "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(5).

202. The enterprise itself is not the liable entity, rather it is the RICO person who conducts the affairs of the enterprise through a pattern of racketeering activity. Kyäni and Breshears described in this complaint are distinct from each other. Breshears is distinct from the corporate defendant. The corporate Defendant is distinct from the RICO enterprise because it is functionally separate, performs different roles within the enterprise and uses its separate legal incorporation to facilitate racketeering activity.

203. Besides paying the salaries of Breshears, Kyäni also created phony distributorship positions for his cohorts, and certain high placed persons, placing them at the top of the pyramid of Distributors where they could receive monthly "commission" checks as leading distributors – without actually distributing anything. To hide these payments, phantom distributor names were entered into the Kyäni accounting system.

### E. The Defendants Engaged In Activities Which Affect Interstate Commerce

204. Each of the Defendants named in this Count engaged in, and/or each others' activities affect, interstate or foreign commerce. The pyramid scheme has operated in the United States, and originated domestic business contracts with people living in China, Sweden and other Countries.

**F.      The Defendants Participated In The Conduct of the Enterprise's Affairs**

205.   Each of the Defendants named in this Count conducted, or participated directly or indirectly, in the conduct of such enterprise's affairs as set forth above.

**G.      The Defendants Engaged In A "Pattern of Racketeering Activity" Over An Extended Period of Time With A Threat of Repetition Into The Future**

206.   RICO requires a "pattern of racketeering activity." A "pattern of racketeering activity" is one that is performed by at least two acts of racketeering activity, or violations of a "predicate" offense (an act "indictable under any of" certain provisions of" 18. U.S.C. § 1961(1)(D)). *See* 18 U.S.C. § 1961(5). A "pattern of racketeering activity" can be a past conduct that by its nature projects into the future with a threat of repetition. It can also be conduct over a closed period through a series of related predicates extending over a substantial period. Both of these apply here.

207.   The Defendants' pattern of racketeering activity is well-established and has continued from 2011 to the present and intends to continue into the future. The Defendants have taken every imaginable step to sell the pyramid program to Distributors and potential Distributors. They each also expect to continue to receive income from the pyramid scheme. With each new person recruited, the Defendants increase the value of their control of the pyramid scheme. The Defendants have stated their intentions to continue to grow the pyramid throughout the United States, and have expanded. It is certain that their conduct is a continuing threat due to their racketeering activities.

**H.      Defendants Have Used And Caused To Be Used Fraudulent Mail and Wire Communications In Interstate Commerce, 18 U.S.C. § 1341 AND 18 U.S.C. § 1343**

208.   Mail and wire fraud are enumerated predicate acts that can constitute RICO "racketeering activity" under Section 1961(1)(D).

209. Mail fraud occurs when an individual devises a plot to defraud and subsequently uses the mail in furtherance of it. 18 U.S.C. § 1341.

210. The Defendants named in this Count have transmitted, caused to be transmitted or invited others to transmit marketing material and income disclosure materials, by mail or private or commercial carriers, such as UPS, for the purpose of executing their scheme or artifice to defraud in violation of RICO. Likewise, they have distributed promotional literature, statements, checks, and other mailings all between 2011 and the present by mail. Without limitation, each statement sent monthly to an Distributor is a mailing and an act of mail fraud, and each promotional literature sent by U.S. Mail is a mailing and an act of mail fraud.

211. Wire fraud occurs when an individual devises a plot to defraud and subsequently uses wire means in furtherance of it. 18 U.S.C. § 1343. The defendants have used the Internet since 2011 to disseminate, publish and spread the pyramid scheme throughout the United States and to China, Sweden, and other Countries for the purpose of executing their scheme or artifice to defraud in violation of RICO. Thus, the Defendants have transmitted, caused to be transmitted and invited others to transmit, by means of wire in interstate commerce, writings, signs, signals, pictures, or sounds for the purpose of executing their scheme or artifice to defraud in violation of 18 U.S.C. §1343.

212. Without limitation, for example, each transmission of a video to be posted on YouTube, Vimeo, Facebook, Wechat, Google, Pinterest, Instagram, Linkedin, or through Twitter, or establishment of a website to disseminate information about the pyramid scheme or transmission of signals, pictures or information to such website is a separate act of wire fraud.

213. Defendants committed at least two predicate acts of mail and/or wire fraud relevant to this Count. These, along with factual allegations against other Defendants, are described throughout this Complaint.

214.   Each of the Defendants named in this Count acted with requisite intent to establish, perpetuate and/or carry out the pyramid scheme to defraud.   Each Defendant named in this Count acted with either specific intent to defraud or with such recklessness with respect to the false or misleading information mailed or wired in furtherance of the pyramid scheme as to constitute requisite scienter to commit mail and wire fraud.

215.   That scienter can be inferred from, among other things at least the following:   (a) Various third parties, Countries, and Distributors of Kyäni have asserted publicly and in litigation, that Kyäni is a pyramid scheme during its short history, (b) many consumers have complained to the FTC that Kyäni constitutes an illegal pyramid scheme (c) the Country of Norway called the police on this "Chain letter game" (d) Defendant Breshears was directly involved in the financing and active management of the Kyäni company  and  individually  knew  and/or recklessly disregarded that that the operation of that entity was an illegal pyramid scheme; (e) Breshears is a veteran of the network marketing  industry; (f) There  is  a network industry awareness that the FTC has closed down similar operations for being an illegal pyramid (for example BurnLounge, Vemma, Equinox and others) and (g) an awareness on the part of each of these Defendants that recruiting others into a particular sales scheme has been deemed by the FTC and courts to be an illegal pyramid scheme.

216.   A number of the Individual Promoter Defendants are also in the separate business of assisting new recruits on how to themselves recruit others.  Some of the individual Promotor Defendants use fake testimonials to market the products of Kyäni.  These Defendants therefore have for years had an opportunity to understand that their participation in the Kyäni scheme is an illegal pyramid and/or recklessly disregarded the notion and consciously participated in an illegal pyramid scheme.

**I.      The Defendants' Promotion of the Pyramid Is A Per Se Scheme To Defraud Under The Mail And Wire Fraud Statutes**

217. The Defendants named in this Count have used a false and fraudulent scheme, or a scheme to defraud within the meaning of federal law, to harm Plaintiff and the Class. In all respects, these Defendants have conducted their affairs unlawfully, intentionally, willfully and with intent to defraud, that is, knowingly and with such specific intent to deceive as is in violation of the mail and wire fraud statutes. They have done so in order to cause financial gain for themselves and for others, all to the detriment of Plaintiff and the Class.

218. First, each Defendant named in this Count has promoted the pyramid scheme that, by its very nature, is a per se scheme and artifice to defraud to obtain money by false pretenses. As detailed in this complaint, all Defendants named in this Count have promoted and successfully expanded the pyramid scheme to victimize the named Plaintiff and the Class. Each of the enumerated acts of wire and mail fraud in furtherance of the pyramid scheme is an act of racketeering. Second, as part of the pyramid scheme, the Defendants named in this Count made numerous false statements in furtherance of the scheme.

219. Examples of the falsity of these statements include: (a) creating and disseminating the false impression that through the pyramid scheme, Distributors like Plaintiff can receive a free car or obtain a sizable income; (b) creating and disseminating the false impression that the Distributors program has enormous or unlimited income potential and that the Distributors can make enormous money as a result of participating as a promoter for the program; (c) creating and disseminating the false impression that the Distributors' is an opportunity that one can make money while partying.

220. Further, the Defendants created and disseminated the false impression that the success stories featured by Kyäni are typical or, in some cases, even possible when defendants knew that the persons portrayed were falsely portrayed, persons portrayed were being paid (unreal) amounts of money for committing an illegal

1  activity and/or were assisted by the defendants in setting up a sufficiently large
2  "downline" that the income generated was in fact large.

3      221.   Third, as part of the pyramid scheme the Defendants named in this Count
4  omitted material facts for the purpose of and with the intention of the fraudulent
5  pyramid scheme by obtaining money from the victims.  Examples of these omissions
6  include: (a) failure to reveal that the multilevel marketing program and its Distributor
7  program are illegal pyramid schemes but instead propagate the statements and
8  impression that it is a legal enterprise; (b) failure to reveal that under compensation
9  plan that the majority of the Distributors have and likely will lose their money; (c)
10  failure to disclose that many of the top Distributors earners paraded by the company
11  (at company-sponsored spectacles and through other publicly disseminated events,
12  videos, documents, and other media) as examples of what Distributors can hope to
13  attain through following the Kyäni compensation plan were in fact already well
14  established salespeople for other network companies who were recruited to bring
15  large, preexisting "downlines" by the company and were placed in their positions,
16  aided in their attainment of their Kyäni ranks, and/or otherwise compensated beyond
17  what is paid to ordinary Distributors under the Compensation Plan; (d) failure to
18  reveal that the company knowingly spread unreal and misleading accounts and claims
19  of the success of its upper level executives, all in an effort to attract new Distributors,
20  but avoid disclosing a direct connection between the statements and Kyäni.

21      J.    **Plaintiff and the Classes Have Proximately Suffered RICO Injury**
22            **To Business**

23      222.   A "violation" of RICO is committed if "individuals and entities," use the
24  mails or interstate wire facilities in the execution of "any scheme to defraud." 18
25  U.S.C. §§ 1341, 1343, Sections 1961(1) (B), 1962.  Sections 1964 (a), (c) and (d)
26  authorize persons "injured" in their "business or property," "by reason of" RICO's
27  "violation" to sue for appropriate redress, including equity relief, treble damages and
28  attorneys' fees.

223. The Plaintiff (and the class sought to be certified) suffered a loss of money composed of the cost they paid to become a distributor, together with the website fees, administrative fees, and the cost of merchandise purchased as samples and for purposes of operating the alleged "business opportunity," and the amount they recovered as commissions or other payments. Guo has lost over $1,500. The losses were proximately caused by the actions described in this Count, and may be presumed from, among other things, the presumption that no one would knowingly join an illegal pyramid scheme.

224. The precise amount lost by the class sought to be certified has not yet been determined, but is believed to be significant. It is believed that each of the unwitting participants in the pyramid scheme sought to be certified as a class has lost from $50 to well over $20,000 as a result of purchasing their Distributor distribution rights. Upon information and belief, the precise amounts that each and every participant in the pyramid scheme has spent on (1) costs associated with the Distributor "business opportunity" and (2) has received in commissions or bonuses or other payments from Kyäni as a result has been tracked, maintained and accounted for by Kyäni through a proprietary software database. Thus, the precise loss of every class member is easily capable of being ascertained in this litigation, and the total business injury capable of being computed for the class.

225. The predicate acts set forth in this Count each were mailings and/or wire transmission of material in furtherance of the promotion of the pyramid scheme. Each of these predicate acts was intended to falsely convey the impression to people like Plaintiff that participation as a Kyäni Distributors was legal; that they had a reasonable opportunity to make money; that people just like them were able to make generous income; and that the commissions or bonuses they would receive would come from the sale of desirable product. The loss suffered by the Plaintiff and the Class was foreseeable and a direct result of the establishment, promotion, and expansion of the pyramid scheme by the Defendants named in this Count. A pyramid scheme depends

on continued expansion by continual recruiting of innocent people who do not realize that the only way in which they can achieve the benefits represented by the pyramid scheme's promoters is to recruit and victimize other innocent people into joining. In reality, like all pyramid schemes, the Compensation Plan and all aspects of the promotion of the pyramid scheme were based on recruiting over product sales, and depended on the known existence of money-losers (like the Plaintiff and the Class) to pay the small group of "winners" inherent in any pyramid scheme. There is a clear causal connection between the promotion and recruiting predicate acts alleged above and the injury suffered by the Plaintiff and the Class.

226. The predicate acts attributed to Kyäni, Breshears, also include the creation and dissemination of the Compensation Plan. Under the Kyäni Compensation Plan, as set forth above, innocent participants could only make money by recruiting others who in turn would recruit others. This was a necessary feature of the Plan, understood as such by all of the Defendants named in this Count. It was the goal of each of these Defendants that Plaintiff subscribe, by the payment of money to Kyäni, to the Compensation Plan. The payment of bonuses and commissions to promoters who were recruiters of participants in the pyramid scheme, like the Plaintiff and the Class, was an intended part of the Kyäni Compensation Plan. Each of the named Plaintiff were placed by Kyäni in a pyramid "downline" whose top slot was occupied by Breshears. Each of the payments made by the Plaintiff to purchase Distributor distribution rights and product, as well as payments they made for website usage, resulted in payment of a bonus or commission payment that was made, directly or indirectly, to Kyäni, Breshears, directly authorized and/or approved of the dissemination of the Kyäni compensation plan that was made a part of the Distributor distribution rights purchased by the Plaintiff. The dissemination of the Kyäni compensation plan, together with predicate acts that purported to falsely emphasize the features of the  compensation plan (for example, without revealing that under the plan there would be many more "losers" than "winners") was in furtherance of the

scheme. Plaintiff lost money by participating in the compensation plan. But for the illegal nature of the bonus and commission payments set forth by the compensation plan, Plaintiff and others would not have lost money. Plaintiff's losses thus, were a direct and proximate cause of their intended participation in the compensation plan authored and/or approved by each of these Defendants.

227. A pyramid scheme depends on recruitment of innocent people. The predicate acts attributed to the promoter Defendants are primarily those that concern the promotion of the scheme and luring innocent people to join the business opportunity. The promoters had an incentive to spread the word. The payment of bonuses and commissions to promoters who were recruiters of more participants was part of the scheme. The dissemination of the Kyäni "business opportunity," by these Defendants together with predicate acts that purported to spread the impression that joining the Kyäni "business opportunity" or that resulted in the recruitment of Plaintiff, directly or indirectly, proximately caused Plaintiff's and the class losses.

228. Breshears: (1) serving as the founder and principal creator of the pyramid scheme, (2) creating and/or approving the creation of the Compensation Plan which pays primarily for recruiting, (3) creating and disseminating countless promotional materials, videos, and public appearances designed to further and expand the pyramid scheme in the United States and abroad, (4) making contractual arrangements with third persons to provide capital to expand the pyramid scheme and to lend the scheme an air of legitimacy, (5) making deals with professional network marketers to pay them hidden inducements and/or assign them "downlines" as an inducement to further the expansion of the pyramid scheme, (6) acting as the "top" distributor and accepting tens of millions of dollars as gains from the pyramid scheme.

229. The Defendants named in this Count used false and fraudulent means and conducted their affairs unlawfully, intentionally, willfully and with the intent to defraud, for their own financial gain and benefit and for the financial gain and benefit

of others, all to the detriment of Guo and others that purchased the Distributor program.

230.    Each of the Defendants named in this Count has violated Section 1962(c) and is liable, jointly and severally, for the business injury caused to the Plaintiff and the Class by his or her actions.

## COUNT VII

## (RICO 18 U.S.C. § 1962(c) AND ARE IN VIOLATION OF 18 U.S.C. §§ 1961(5), 1962(d))

(Plaintiff on behalf of herself and the Class Against All Defendants including DOES 1 through 100)

231.    Section 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

232.    Plaintiff re-states the previous paragraphs as if fully set forth here.

233.    Each of the Defendants named in this Count have participated in a conspiracy to violate Count VI of the Complaint.

234.    Each of the Defendants named in this Count has participated in the pyramid scheme and their participation is necessarily a combination of more than two individuals.

235.    The roles of all of the Defendants named in this Count are set forth in Count VI.

236.    Defendants' and nonparty entities' creation, support or maintenance of the pyramid scheme is illegal.

237.    The Defendants named in this Count had a meeting of the minds on the object or course of action, specifically to create, support and maintain the pyramid scheme for their financial benefit as evidenced by each Defendant's voluntary and knowing participation in the pyramid scheme. These agreements and understandings are described in Count VI.

238. Each of the Defendants named in this Count and others have committed one or more overt acts to achieve or further the unlawful objects and purposes of the pyramid scheme detailed herein. They include the following:

239. Breshears: (1) serving as the founder and principal creator of the pyramid scheme, (2) creating and/or approving the creation of the Compensation Plan which pays primarily for recruiting, (3) creating and disseminating countless promotional materials, videos, and public appearances designed to further and expand the pyramid scheme in the United States and abroad, (4) making contractual arrangements with third persons to provide capital to expand the pyramid scheme and to lend the scheme an air of legitimacy, (5) making deals with professional network marketers to pay them hidden inducements and/or assign them "downlines" as an inducement to further the expansion of the pyramid scheme, (6) acting as the "top" distributor and accepting tens of millions of dollars as gains from the pyramid scheme.

240. The Defendants named in this Count used false and fraudulent means and conducted their affairs unlawfully, intentionally, willfully and with the intent to defraud, for their own financial gain and benefit and for the financial gain and benefit of others, all to the detriment of Plaintiff Guo, and others that purchased the Distributors. These acts, intent and losses are set forth in Count VI.

241. Each of the Defendants named in this Count has violated Section 1962(c) and is liable, jointly and severally, for the business injury caused to the Plaintiff and the Class by his or her actions.

## COUNT VIII

### (**Federal Securities Fraud**)

(Plaintiffs on behalf of themselves and the Class Against All Defendants including DOES 1 through 100)

242. Plaintiffs reallege all allegations as if fully set forth herein, and incorporate previous allegations by reference.

243. In the alternative to Counts Six and Seven, and without prejudice to their

position that Counts Six and Seven are not preempted by the PSLRA, Plaintiff in Count Eight alleges violations of the securities laws.

244. Only to the extent Defendants contend that Plaintiff's purchases of starter kits, payment of monthly and annual fees, and purchases of Kyäni products constitute investments in unregistered securities (the sale of which would be a past and continuing violation of federal securities laws), and only if Defendants are successful in obtaining a dismissal for judgment against Plaintiff's RICO claims on the grounds that the PSLRA preempts their RICO claims, Plaintiff contends that her purchases of starter kits, payment of monthly fee, and purchases of Kyäni products constitute investments in securities.

245. Kyäni made numerous material omissions in its Policies regarding retail sales. Kyäni represented that retail sales were a significant part of Defendants' revenues. Each renewal of the distributorship constitutes a separate investment contract, in the alternative.

246. These statements are misleading because they fail to inform Distributors that "retail sales," particularly as defined in the Policies, are not a true viable way of earning income because Distributors are extremely unlikely to make significant "retail sales" and because the only realistic way to make money in the Kyäni scheme is through recruiting.

247. Kyäni made material omissions in its Policies regarding Distributors' ability to earn money. In the Policies, Kyäni informed its Distributors that they do not even need to be good at sales, and they can still earn money.

248. This statement is misleading because it fails to inform Distributors that very few Distributors are likely to earn any profit from participating in Kyäni, regardless of how much work they put in and regardless of what part of the country they live in.

249. By making affirmative statements regarding retail sales and the ability of Distributors to earn income, Kyäni undertook an affirmative obligation to make the

disclosures necessary to make such statements not misleading.

250. Kyäni made the then-current version of the Policies available to Plaintiffs and the Class Members through Kyäni's website at all times.

251. Kyäni made these omissions knowing that doing so was false and misleading. Kyäni benefitted in a concrete and substantial way from the operation of the pyramid scheme, the recruitment of new Distributors, and new Distributors' reliance on Kyäni's omissions.

252. Kyäni made these omissions with the specific intent that Distributors rely on them.

253. Plaintiffs' and the Class Members' reliance on the omissions may be presumed.

## COUNT IX

### Unjust Enrichment

(Plaintiff on behalf of herself and the Classes Against Defendant Breshears, including DOES 1 through 100)

254. Plaintiff and the Classes repeat and re-allege every allegation above as if set forth herein in full.

255. Unjust enrichment occurs when a plaintiff confers a benefit to the defendant, the defendant accepts and retains the benefit, and defendant does not pay the Plaintiff the value of the benefit.

256. Breshears, who was named in this Count, has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and the members of the class in that the financial benefits obtained by them came as a result of their promotion of the unlawful pyramid scheme. The financial benefit that Defendant Breshears came was obtained came from the Plaintiff and the members of the class, who unwittingly participated in the pyramid scheme and naturally and inevitably lost money in the process. The unjustly-obtained benefits are comprised of the following three categories of gains.

257. First, the individuals defendants named in this Count made contractual agreements with each other and with other third-parties that depended on the success of the pyramid scheme. Breshears took active steps to expand the scope of the pyramid scheme, and increased the number of participants—and therefore the number of inevitable losers in order to maximize the amounts each would get. These Defendants were able to obtain payouts under the contracts on the backs of the Plaintiff.

258. Second, Breshears, together with his controlled entities, and other parties have each been enriched in significant amounts as a result of the performance of their various illegal duties. Regardless of in what year, Breshears was the ultimate upline from the Plaintiff and the class, and thus, as a matter of the compensation plan implemented by Kyäni, obtained bonuses and commissions, which were necessarily funded by a portion of the Plaintiff's (and the classes) purchase of distributorships, and purchase of product. These payments were thus, directly funded by the Plaintiff by virtue of the compensation system paying commissions and bonuses "upline" to promoters at the top of the pyramid. The value of these benefits can be computed but is presently unknown. But for the illegal Compensation Plan and the commission of the illegal pyramid scheme, Breshears could not have obtained the funds that came to them via the Compensation Plan.

259. Third, in addition to the unjust benefits, Breshears has obtained as a result of being upline at the top of the Kyäni Pyramid, Breshears has also received a compensation in an amount equaling in the millions based on their executive position in the pyramid scheme. The monies that they received, in part to pay these salaries, came from Plaintiff's (or the class) payments for the same reasons as set forth above.

260. The revenue that resulted in these payments came directly from the payments made by Plaintiff and the class. It would be unjust to permit these Defendants to retain these ill-gotten gains.

## **PRAYER FOR RELIEF**

The named Plaintiff and the Plaintiff's class and subclasses request the following relief:

a.     Certification of the class and subclasses;

b.     A jury trial and judgment against Defendants;

c.     Rescission of the agreements, invoices, open accounts, receipts, and open book accounts, upon which the scheme is based, and recovery of all consideration paid pursuant to the scheme, less any amounts paid or consideration provided to the participant pursuant to the scheme;

d.     Damages for the financial losses incurred by Plaintiff and by the class and subclasses because of the Kyäni and Breshears' conduct and for injury to their business and property;

e.     Restitution and disgorgement of monies;

f.     Temporary and permanent injunctive relief enjoining Kyäni from paying its Distributors recruiting rewards that are unrelated to retail sales to ultimate users and from further unfair, unlawful, fraudulent and/or deceptive acts;

g.     The cost of suit including reasonable attorneys' fees under California Code of Civil Procedure § 1021.5, Civil Code §1689.2, pursuant to the statute's sued hereunder, and otherwise by law;

h.     Punitive damages;

i.     Treble damages pursuant to RICO;

j.     For damages in an amount yet to be ascertained as allowed by law; and

k.     For such other damages, relief and pre- and post-judgment interest as the Court may deem just and proper.

| | |
|---|---|
| 1 | Respectfully submitted, |
| 2 | Dated: November 13, 2017     By: */s/ Blake J. Lindemann* |
| 3 | **LINDEMANN LAW FIRM, APC** |
| 4 | BLAKE J. LINDEMANN, SBN 255747<br>433 N. Camden Drive, 4th Floor |
| 5 | Beverly Hills, CA 90210<br>Telephone: (310)-279-5269 |
| 6 | Facsimile: (310)-300-0267<br>E-mail: blake@lawbl.com |
| 7 | |
| 8 | Attorneys For Plaintiff |
| 9 | YAN GUO AND ALL THOSE SIMILARLY<br>SITUATED |

1

## **DEMAND FOR JURY TRIAL**

2     Plaintiff Yan Guo, on behalf of herself, and those similarly situated, hereby

3 request a jury trial on all matters so triable.

4

5 Dated: November 13, 2017     By: */s/ Blake J. Lindemann*

6     **LINDEMANN LAW FIRM, APC**
       BLAKE J. LINDEMANN, SBN 255747
7     433 N. Camden Drive, 4th Floor
       Beverly Hills, CA 90210
8     Telephone: (310)-279-5269
       Facsimile: (310)-300-0267
       E-mail:     blake@lawbl.com
9

10     Attorneys For Plaintiff
       YAN GUO AND ALL THOSE SIMILARLY
11     SITUATED

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28